1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11
12
13
14
15

| | |
|---|---|
| ALPHA VENTURES CAPITAL PARTNERS LP, et al., | CASE NO. C20-5909JLR |
| Plaintiffs, | ORDER GRANTING DEFENDANT DR. POURHASSAN'S MOTION TO DISMISS |
| v. | |
| NADER Z. POURHASSAN, et al., | |
| Defendants. | |

## I.    INTRODUCTION

16
17
18
19
20
21
22

Before the court is Defendant Nader Pourhassan's motion to dismiss Plaintiffs

Alpha Ventures Capital Partners LP, Caracciolo Family Trust, Gregory Gould, Law

Offices of Kenneth E. Chyten 401(k) Profit Sharing Plan, Gavin Myers, and Martin

Peterson's (collectively, "Plaintiffs") complaint against him.  (MTD (Dkt. # 12); *see also*

Reply (Dkt. # 26).)  Plaintiffs oppose Dr. Pourhassan's motion.  (Resp. (Dkt. # 24).)

Having considered the motion, the parties' submissions regarding the motion, the

relevant portions of the record, and the applicable law,[1] the court GRANTS Dr.

Pourhassan's motion and DISMISSES Plaintiffs' complaint with prejudice.

## II.    BACKGROUND

**A.    Factual Background[2]**

Plaintiffs are six current holders of common stock in Nominal Defendant

CytoDyn, Inc. ("CytoDyn").  (Compl. (Dkt. # 1) ¶ 5.)  Dr. Pourhassan has been the

president and chief executive officer of CytoDyn since December 2012, and a member of

its board of directors since September 2012.  (*Id.* ¶ 13.)  Plaintiffs allege that Dr.

Pourhassan violated Section 16(b) of the Securities and Exchange Act of 1934 (the

"Exchange Act"), 15 U.S.C. § 78p(b), when he improperly sold shares of CytoDyn stock

within six months of being granted stock options by CytoDyn's board.  (*Id.* ¶¶ 52-54.)

On December 19, 2019, the CytoDyn board of directors awarded Dr. Pourhassan

2,000,000 shares of CytoDyn common stock at an exercise price of $0.63 per share (the

"December 2019 Grant").  (*Id.* ¶ 16.)  At the time of the December 2019 Grant,

CytoDyn's board of directors comprised five individuals:  Dr. Pourhassan, Scott Kelly,

Michael Klump, Jordan Naydenov, and David Welch.  (*Id.* ¶ 15.)  Three board members

approved of the December 2019 Grant:  Mr. Kelly, Mr. Welch, and Mr. Grant.  (*Id.* ¶ 31.)

---

[1] Dr. Pourhassan requests oral argument.  (*See* MTD at 1.)  But the court finds oral argument would not be helpful to the disposition of this motion and therefore declines to hold oral argument.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

Mr. Naydenov was not present for the December 2019 Grant, and Dr. Pourhassan did not cast a vote.  (*Id.* ¶ 32.)

Approximately four months later, between April 30 and May 4, 2020, Dr. Pourhassan sold 4,821,174 shares of CytoDyn common stock at prices ranging from $2.53 per share to $3.74 per share.  (*Id.* ¶ 18.)  As a part of these transactions, Dr. Pourhassan exercised the options from the December 2019 Grant and sold all 2,000,000 shares.  (*Id.* ¶ 19.)

**B.    Procedural Background**

Plaintiffs filed their complaint against Dr. Pourhassan on September 10, 2020.  (*See generally id.*)  They bring one claim that Dr. Pourhassan is strictly liable for violating Section 16(b) of the Exchange Act for selling shares from the December 2019 Grant without holding them for six months and without any applicable exemptions.  (*Id.* ¶¶ 51-54.)  Plaintiffs seek to have the profits of Dr. Pourhassan's sales disgorged and returned to CytoDyn.  (*Id.* ¶ 55.)  Dr. Pourhassan filed the instant motion on November 20, 2020.  (MTD.)

**III.    ANALYSIS**

**A.    Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded

1  facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit*,

2  135 F.3d at 661.  The court, however, is not required "to accept as true allegations that

3  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

4  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "To survive a

5  motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

6  'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

7  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also*

8  *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial

9  plausibility when the plaintiff pleads factual content that allows the court to draw the

10  reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556

11  U.S. at 677-78.  Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable

12  legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

13  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

14  **B.     Rule 16b-3(d)(1) Exemption**

15        The parties agree that Plaintiffs' allegations regarding Dr. Pourhassan's sales of

16  stock between April 30 and May 4, 2020, meet the initial requirements for liability under

17  Section 16(b) of the Exchange Act, (*see* MTD at 3-4), but disagree over whether the

18  transaction is exempted by a rule promulgated by the Securities and Exchange

19  Commission ("SEC") (*id*. at 4-5); 17 C.F.R. § 240.16b-3(d).  The court concludes that the

20  December 2019 Grant is exempt and, therefore, Plaintiffs fail to state a claim upon which

21  relief can be granted.

22

ORDER - 4

SEC Rule 16b-3(d) describes the relevant exemption from liability under Section 16(b) of the Exchange Act as follows:

(d) Acquisitions from the issuer. Any transaction, other than a Discretionary Transaction, involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose, shall be exempt if:

(1) The transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors; [or]

(2) The transaction is approved or ratified, in compliance with section 14 of the Act, by either:  the affirmative votes of the holders of a majority of the securities of the issuer present, or represented, and entitled to vote at a meeting duly held in accordance with the applicable laws of the state or other jurisdiction in which the issuer is incorporated; or the written consent of the holders of a majority of the securities of the issuer entitled to vote; provided that such ratification occurs no later than the date of the next annual meeting of shareholders . . . .

17 C.F.R. § 240.16b-3(d).

Dr. Pourhassan argues that the December 2019 Grant was an exempt acquisition because three of the five CytoDyn board members approved the Grant, meaning it was "approved by the board of the directors of the issuer."  (MTD at 5; *see also* 17 C.F.R. § 240.16b-3(d)(1).)  Plaintiffs contend that Rule 16b-3(d)(1)'s exemption requires "full board" approval, which they interpret to require that each member of the board, rather than a majority of board members, approve the transaction.  (*See* Compl. ¶ 28; Resp. at 11.)  According to Plaintiffs, Dr. Pourhassan's argument that a majority of the board is sufficient is "entirely unsupported" and requires the court to conclude the "'full board' exemption is a misnomer."  (Resp. at 2.)

1    But there is a problem with Plaintiff's argument—the phrase "full board" does not

2    appear anywhere in Rule 16b-3(d).  *See* 17 C.F.R. § 240.16b-3(d).  Nevertheless,

3    Plaintiffs repeatedly refer to the relevant portion of Rule 16b-3(d)(1) as the "Full Board

4    Approval Exemption"[3] and insist that it requires that exempt transactions be approved by

5    each board member.  (*See generally* Resp.)  In support of their interpretation, Plaintiffs

6    engage in a two-step sequence.  First, they point out that the SEC has, at times, referred

7    to the relevant exempting actions as "full board" approval.  (*See id.* at 10-11 (citing SEC

8    releases proposing and adopting Rule 16b-3(d)).)  Second, while the phrase "full board"

9    is not defined by the regulation, the Exchange Act, or SEC guidance documents,

10   Plaintiffs assert it would make "no sense" for the court to conclude that it means anything

11   other than approval by each board member.  (*Id.* at 12.)  The court disagrees with

12   Plaintiffs and finds that approval by three out of CytoDyn's five board members is

13   sufficient for Rule 16b-3(d)(1)'s exemption to apply to the December 2019 Grant.

14   Plaintiffs contend that the SEC has consistently referred to the relevant exemption

15   as requiring approval of the full board.  (Resp. at 11.)  They point to the SEC's releases

16   regarding the proposal and adoption of Rule 16b-3(d) and SEC guidance documents that

17   have used the term "full board."  (*Id.* (collecting sources).)  But rather than trying to

18   shoehorn an undefined term into Rule 16b-3(d), the SEC appears to be using the term

19

20   ───────────────────

21   [3] While Plaintiffs argue that Dr. Pourhassan seeks to make the "full board approval exemption" a misnomer, the court notes that, despite Rule 16b-3(d)'s being promulgated in 1996, a search in Westlaw for the term "full board approval exemption" yields no results.  A search in Lexis, on the other hand, yields two:  Plaintiffs' complaint and response to the motion to dismiss

22   in this matter.

1    "full board" to distinguish this exemption from the other two exemptions described in the

2    Rule.  *See* 17 C.F.R. § 240.16b-3(d) (also exempting transactions approved by "a

3    committee of the board of the directors that is composed solely of two or more

4    Non-Employee Directors" or "holders of the majority of the securities of the issuer").

5    Every SEC statement listed by Plaintiffs refers to exemption by "full board" approval in

6    tandem with the other forms of exemption listed in Rule 16b-3(d).  *See, e.g.*, *Ownership*

7    *Reports and Trading by Officers, Directors and Principal Security Holders*, 61 Fed. Reg.

8    30,376, 30,381 (June 14, 1996) (referring to "'Non-Employee Director,' full board, or

9    shareholder approval" as forms of exemption).  It is more reasonable to read these

10   non-enforcement statements from the SEC as using the term "full board" to distinguish

11   the Rule 16b-3(d)(1) exemption requiring board approval from the Rule 16b-3(d)(1)

12   exemption that merely requires approval from a committee of the board and the Rule

13   16b-3(d)(2) exemption that requires shareholder approval, as opposed to an attempt to

14   add new, undefined language to the substance of the rule.

15       The court's interpretation is bolstered by the lack of supporting caselaw for the

16   Plaintiff's position.  Plaintiffs cite Delaware cases employing the term "full board" and

17   CytoDyn's organizational documents, which at no point use the term "full board."[4]  (*See*

18   Resp. at 12-15.)  Neither source sheds any light on what the SEC meant when it used the

19

20
_____

21       [4] Plaintiffs cite two federal cases that use the term "full board" in reference to Rule
     16b-3(d), but both cases are merely quoting the SEC statements discussed in the previous
     paragraph and neither apply the Rule as Plaintiffs contemplate.  (*See* Compl. ¶ 30 (citing

22   *Dreiling v. Am. Express Co.*, 458 F.3d 942, 954 (9th Cir. 2006); *Atl. Tele-Network v. Prosser*,
     151 F. Supp. 2d 633, 638 (D.V.I. 2000)).)

1    term "full board" in its statements, let alone what the SEC meant when it did not define

2    the term or include it in the Rule itself.  Federal courts that have applied Rule 16b-3(d)(1)

3    have not delved into whether board approval was the result of a "full board" as Plaintiffs

4    interpret the term.  *See, e.g.*, *Roth ex rel. Beacon Power Corp. v. Perseus, L.L.C.*, No. 05

5    Civ. 10466(RPP), 2006 WL 2129331, at *6, *9-*11 (S.D.N.Y. July 31, 2006), *aff'd*, 522

6    F.3d 242 (2d Cir. 2008) (finding board approval exemption applied but not discussing

7    whether this involved the "full board"); *Donoghue v. Casual Male Retail Grp., Inc.*, 427

8    F. Supp. 2d 350, 358-59 (S.D.N.Y. 2006) (same).  Courts have, however, tacitly

9    approved exemptions that involved recusal by some board members in the manner Dr.

10   Pourhassan recused himself at the December 2019 board meeting.  *See, e.g.*, *Olagues v.*

11   *Musk*, Case No. 18-cv-07110-BLF, 2019 WL 3457831, at *1 (N.D. Cal. July 31, 2019)

12   ("Individual Defendants Elon Musk and Antonio Gracias recused themselves from the

13   approval process due to their service on the SolarCity Board.").  Plaintiffs make no

14   attempt to explain how reading a requirement that each board member approve the

15   transaction into Rule 16b-3(d)(1) accounts for the practice of board member recusal in

16   these transactions.  (*See* Resp. at 17-18.)

17           Finally, Plaintiffs' arguments are undermined by their own cited authority.  In

18   their response, Plaintiffs cite Peter J. Romeo and Alan L. Dyer's treatise on Section 16

19   for the proposition that "[t]he Full Board Approval Exemption applies to a transaction if

20   all procedural requirements for board approval are met."  (Resp. at 10 (citing *Section 16*

21   *Treatise and Reporting Guide*, § 14.06[3] (5th ed. 2019)).)  Plaintiffs pointedly ignore the

22   immediately following sentences in the treatise:

> The rule does not require that a majority, or even any, of the directors be disinterested in the approved transactions as a condition to the availability of the exemption.  Nor do all directors need to participate in the vote to approve the transactions.

Peter J. Romeo & Alan L. Dye, *Section 16 Treatise and Reporting Guide*, § 14.06[3] (5th ed. 2019).[5]  While Messrs. Romeo and Dye's views are by no means dispositive, Plaintiffs appear to give them great weight.  (*See* Compl. ¶¶ 26, 28 (favorably citing works by Romeo and Dye); Resp. at 10-11, 15, 19-20 (same).)  In this instance, the court agrees with the authors' conclusion that not all directors need participate in a vote for the Rule 16b-3(d)(1) exemption to apply.

In the absence of a "full board" requirement, Dr. Pourhassan argues that CytoDyn's bylaws require only that a quorum of the board of directors be present to transact business, and that a vote by the majority of the directors at a board meeting with such a quorum constitutes action by the board.  (MTD at 5-6 (citing DEL. CODE ANN. tit. 8, § 141(b) and CytoDyn's bylaws).)  Plaintiffs provide no arguments to refute this. (*See* Resp. at 1 ("Plaintiffs are not challenging the Board's *authority* to grant [Dr.] Pourhassan stock awards or the *validity* of the Board's act under Delaware corporate law.") (emphasis in original).)  Thus, the court concludes that the December 2019 Grant was "approved by the board of directors of the issuer" and exempt under Rule 16b-3(d)(1).  Plaintiffs concede that if this exemption applies, they have no case.  (*Id*. at

---

[5] Plaintiffs contend that while writing their complaint, they did not have access to the 5th edition of the work, and the 4th edition does not contain the sentence regarding full participation of directors. (Resp. at 20); Peter J. Romeo & Alan L. Dye, *Section 16 Treatise and Reporting Guide*, § 14.06[3] (4th ed. 2012).

1    9-10 ("Whether or not the Full Board Approval Exemption applies is the only issue in

2    this case.").)  Therefore, Dr. Pourhassan's motion to dismiss for failure to state a claim is

3    GRANTED, and Plaintiffs claim is DISMISSED with prejudice.[6]

4    **C.    Rule 11(b) Compliance**

5            The Exchange Act provides that "[i]n any private action arising under this chapter,

6    upon final adjudication of the action, the court shall include in the record specific

7    findings regarding compliance by each party and each attorney representing any party

8    with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any

9    complaint, responsive pleading, or dispositive motion."  15 U.S.C. § 78u-4(c)(1).  While

10   the court disagrees with Plaintiffs' interpretation of Rule 16b-3(d), it concludes that their

11   arguments are "warranted . . . by a nonfrivolous argument for extending, modifying, or

12   reversing existing law."  *See* Fed. R. Civ. P. 11(b).  The court finds that all parties and

13   attorneys have complied with each requirement of Rule 11(b) and that no sanctions are

14   proper.

15   //

16   //

17   //

18   //

19

20   ---
     [6] Because Plaintiffs concede that the only issue in this case is whether the Rule

21   16b-3(d)(1) exemption applies and they agree with Dr. Pourhassan on all relevant facts, the court determines dismissal with prejudice is appropriate.  *See Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (explaining a district court's discretion in

22   dismissing a complaint without leave to amend may include analysis of whether amendment would be futile).

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS Dr. Pourhassan's motion to dismiss (Dkt. # 12).  Plaintiffs' complaint is DISMISSED with prejudice and without leave to amend.

Dated this 12th day of March, 2021.

JAMES L. ROBART
United States District Judge