# FOR PUBLICATION

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALPHA VENTURE CAPITAL PARTNERS LP; CARACCIOLO FAMILY TRUST; GREGORY A. GOULD; LAW OFFICES OF KENNETH E. CHYTEN 401(K) PROFIT SHARING PLAN; GAVIN MYERS; MARTIN PETERSON, derivatively on behalf of CytoDyn Inc, <br><br>    *Plaintiffs-Appellants*, <br><br>v. <br><br>NADER Z. POURHASSAN; CYTODYN, INC., Nominal; a Delaware corporation, <br><br>    *Defendants-Appellees.* | No. 21-35274 <br><br> D.C. No. 3:20-cv-05909-JLR <br><br> OPINION |

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Submitted February 11, 2022[*]
Seattle, Washington

Filed April 8, 2022

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  Jay S. Bybee, Carlos T. Bea, and
Morgan Christen, Circuit Judges.

Opinion by Judge Bea

## SUMMARY[**]

### Securities

The panel affirmed the district court's dismissal of an action brought by shareholders of CytoDyn, Inc., alleging that a corporate insider violated § 16(b) of the Securities Exchange Act of 1934 by failing to disgorge to the corporation all profits made from a short-swing transaction in which he bought and then sold company securities within a six-month period.

The panel held that defendant Nader Pourhassan was not required to disgorge to CytoDyn his short-swing profits from exercising options and warrants granted by CytoDyn, entitling him to purchase and later sell CytoDyn shares. The panel held that the short-swing transaction fell within an exemption, set forth in SEC Rule 16b-3(d)(1), because the option and warrant award was "approved by the board of directors" of CytoDyn. The panel concluded that the affirmative votes of three of CytoDyn's five board members, at a meeting where only four board members were present, was sufficient, and a unanimous decision was not required

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

ALPHA VENTURE CAPITAL PARTNERS V. POURHASSAN   3

under either the plain text of Rule 16-3(d)(1), Delaware corporate law, or CytoDyn's bylaws.

## COUNSEL

Rylan Weythman and Kelly A. Mennemeier, Foster Garvey PC, Seattle, Washington; Mark Richardson, Labaton Sucharow LLP, Wilmington, Delaware; Michael J. Maimone, Barnes & Thornburg LLP, Wilmington, Delaware; Steven J. Purcell, Purcell Julie & Lefkowitz LLP, New York, New York; for Plaintiffs-Appellants.

Thomas R. Johnson, Perkins Coie LLP, Portland, Oregon, for Defendant-Appellee Nader Z. Purhassan.

Ian Christy, Miller Nash LLP, Portland, Oregon, for Nominal Defendant-Appellee CytoDyn, Inc.

## OPINION

BEA, Circuit Judge:

CytoDyn, Inc. is a publicly traded corporation incorporated in the state of Delaware. Appellee Nader Pourhassan is (and was, at all relevant times) CytoDyn's Chief Executive Officer (CEO) and a member of its board of directors. In late 2019, CytoDyn granted Pourhassan options and warrants entitling him to purchase several million CytoDyn shares at certain, specified prices. In mid-2020, about five months after that option and warrant award, Pourhassan exercised those options and warrants and then sold the resulting CytoDyn stock at a profit. Appellants

here—several shareholders of CytoDyn (the "Shareholders")—sued Pourhassan, alleging that he violated Section 16(b) of the Securities Exchange Act of 1934. Section 16(b) requires corporate insiders like CEO Pourhassan to disgorge to the corporation all profits the insiders make from buying and then selling (or selling and then buying) company securities within any six-month period (a so-called "short-swing" transaction).

The district court dismissed the Shareholders' complaint, finding that Pourhassan need not disgorge his short-swing profits to CytoDyn because his short-swing transaction fell within an exemption to the federal rule because the option and warrant award was "approved" by CytoDyn's board of directors. We affirm.

## I.   BACKGROUND

### A.   Statutory Background

Section 16(b) of the Securities Exchange Act of 1934 is meant to prevent corporate insiders (*i.e.*, corporate executives, officers, and directors) from "exploit[ing] information not generally available to others to secure quick profits." *Kern Cnty. Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 592 (1973). In Congress's view, short-swing transactions by corporate insiders pose an "intolerably great" risk of this type of exploitation. *Dreiling v. Am. Express Co.*, 458 F.3d 942, 947 (9th Cir. 2006) (quoting *Kern*, 411 U.S. at 592). So, to prevent potential abuse by corporate insiders, Section 16(b) requires such insiders to return to the corporation any profits they realize from short-swing transactions. *See* 15 U.S.C. § 78p(b). Section 16(b) "imposes strict liability regardless of motive," requiring all corporate insiders to disgorge their profits from all short-

swing transactions, even those transactions "not actually based on inside information." *Dreiling*, 458 F.3d at 947.

Recognizing Section 16(b)'s broad reach, Congress authorized the Securities and Exchange Commission to issue rules exempting from Section 16(b) certain transactions that the SEC deemed unlikely to involve inside information. *See* 15 U.S.C. § 78p(b). Under that rulemaking authority, the SEC issued rules creating several exemptions from Section 16(b). As relevant here, SEC Rule 16b-3(d) exempts from Section 16(b) any "transaction . . . involving an acquisition from the issuer" (*i.e.*, an acquisition from the insider's corporation itself) so long as the transaction was either: 1) "approved by the board of directors of the issuer" (here, the issuer is CytoDyn); 2) approved by "a committee of the board of directors that is composed solely of two or more Non-Employee Directors"; or 3) approved by a shareholder vote. 17 C.F.R. § 240.16b-3(d)(1), (2). In the SEC's view, an insider's acquisition of securities from the issuer does not "present the same opportunities for insider profit on the basis of non-public information as do" other types of transactions. *Dreiling*, 458 F.3d at 948 (quoting Ownership Reports and Trading by Officers, Directors and Principal Security Holders, 61 Fed. Reg. 30,376, 30,377 (June 14, 1996)). "[W]here the issuer, rather than trading markets, is on the other side of an officer or director's transaction in the issuer's equity securities, any profit obtained is not at the expense of uninformed shareholders and other market participants of the type contemplated by [Section 16(b)]." *Id.* (quoting Ownership Reports and Trading, 61 Fed. Reg. at 30,377).

The first of these exemptions—the board approval exemption—is the exemption at issue here. Under that exemption, an insider's acquisition of securities from the

6   ALPHA VENTURE CAPITAL PARTNERS V. POURHASSAN

issuer are exempt from Section 16(b) if the acquisition was "approved by the board of directors of the issuer." 17 C.F.R. § 240.16b-3(d)(1). So, under this exemption, a corporate insider can obtain corporate securities from the issuer with board approval and then re-sell those securities within six months without triggering Section 16(b)'s profit-remission requirements.[1]

### B. Factual Background

In December 2019, CytoDyn granted Pourhassan stock options giving him the right to purchase 2,000,000 shares of CytoDyn stock and warrants giving him the right to purchase an additional 2,000,000 CytoDyn shares.[2] The same day, CytoDyn's board of directors met. Of the five board members, four were present at the meeting; one was absent. Of the four members present, three voted to approve the award of options and warrants to Pourhassan; Pourhassan himself was present but did not cast a vote. Under CytoDyn's bylaws, the four board members present at the December 2019 meeting constituted a "quorum for the

---

[1] The parties do not contest that the board of directors need only approve the insider's acquisition of securities from the issuer and need not also approve the insider's subsequent sale of those securities. So we assume without deciding that the parties are correct. *See also Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp.*, 298 F.3d 136, 140–46 (2d Cir. 2002) (affirming a lower court ruling that the 16b-3(d)(1) exemption applied because the board approved a compensation plan that "precisely delimited the securities grants that the individual defendants would ultimately receive" without inquiring whether the plan also specified how the defendants were to sell the securities).

[2] Warrants are similar to stock options in that they entitle the warrant-holder to purchase shares of stock of a specified company at a specific exercise price, usually within a specified time period. *See* Warrant, *Black's Law Dictionary* (11th ed. 2019).

transaction of business" and the affirmative vote of three directors—a majority of the directors present—"constitute[d] action by the Board of Directors."

In late April and early May 2020, less than six months after the December 2019 option and warrant award and board meeting, Pourhassan exercised the options that he held to buy 2,000,000 shares of CytoDyn stock and sold nearly 5,000,000 shares of CytoDyn stock, making a significant profit.  Soon thereafter, some CytoDyn shareholders demanded that Pourhassan disgorge to CytoDyn the profits that he made from selling the shares of CytoDyn stock that he obtained through the 2019 option and warrant award.  The Shareholders argued that because the 2019 award and the subsequent sales were within six months of one another, they were a short-swing transaction under Section 16(b) of the Exchange Act.[3]  CytoDyn responded that the option and warrant award was exempt under SEC Rule 16b-3(d)(1), relieving Pourhassan of his obligation to disgorge his profits to CytoDyn.  After several fruitless back-and-forths between the Shareholders and CytoDyn, the Shareholders sued.

In the district court, Pourhassan moved to dismiss the Shareholders' complaint on the grounds that Rule 16b-3(d)(1)'s board approval exemption applied to the 2019 option and warrant award.  The Shareholders argued that the 16b-3(d)(1) exemption did not apply because, in their view, the relevant insider-issuer transaction must be approved by "the company's 'full board' of directors—all directors, not

---

[3] The parties do not contest that Pourhassan's acquisition of the options and warrants was a "purchase" of securities under Section 16(b), so we assume without deciding that the parties are correct on this matter. *See also Gryl*, 298 F.3d at 141 ("[F]or purposes of the rules promulgated under Section 16(b) the acquisition of a securities option is deemed to be equivalent to the acquisition of the security underlying that option.").

8  ALPHA VENTURE CAPITAL PARTNERS V. POURHASSAN

merely a majority." And here, the parties agree that, of CytoDyn's five board members, only four attended the meeting to approve the option and warrant award and only three voted to approve that award. The district court dismissed the Shareholders' complaint, finding no support for the Shareholders' argument in the applicable caselaw or the text of Rule 16b-3(d). The Shareholders timely appealed.

## II.  STANDARD OF REVIEW

We review de novo a district court's decision to dismiss a complaint under Fed. R. Civ. P. 12(b)(6). *See Dreiling*, 458 F.3d at 946 n.2. We may consider documents referred to in the complaint or any matter subject to judicial notice, including SEC filings. *See id.*

## III.  DISCUSSION

The parties dispute only whether the Rule 16b-3(d)(1) board approval exemption applies to Pourhassan's 2019 option and warrant award.[4] Specifically, the parties dispute the meaning of the phrase "approved by the board of directors" as used in that rule. The Shareholders argue that 16b-3(d)(1) requires approval by the "full board" of directors. On that theory, the affirmative votes of three of CytoDyn's five board members, at a meeting where only four board members were present, does not constitute "approv[al] by the board of directors" of CytoDyn under Rule 16b-3(d)(1). Pourhassan disagrees. In his view, because the CytoDyn board approved the 2019 option and warrant award by a majority vote "in compliance with

---

[4] The parties do not dispute that Pourhassan, as CytoDyn's CEO, is a corporate executive subject to Section 16(b).

Delaware law and CytoDyn's bylaws," the board "approved" the award under 16b-3(d)(1).  The district court agreed with Pourhassan.  With jurisdiction under 28 U.S.C. § 1291, we affirm.

Recall that Rule 16b-3(d)(1) exempts from Section 16(b) any transactions that involve a corporate insider's acquisition of securities from the issuer if the acquisition was "approved by the board of directors" of the issuer (here, CytoDyn). 17 C.F.R. § 240.16b-3(d)(1).  In plain English, if a corporation's board "approve[s]" the corporation's decision to give securities to an insider, the insider can re-sell those securities within six months without having to disgorge his profits to the corporation under Section 16(b).  The operative text from the rule is "approved by the board of directors"; the two component phrases are "approved" and "board of directors."  Neither phrase supports the Shareholders' proposed unanimity requirement.

First is the word "approved."  "Approved" is the past tense of the verb "approve," which means to "give formal sanction to" or to "confirm authoritatively."  Approve, *Black's Law Dictionary* (11th ed. 2019).  "Approved" by itself does not prescribe any particular form of approval or process for obtaining approval.  Approval does not inherently require unanimity, a supermajority, a particular quorum, or any other specific steps. A complete but non-unanimous body can give approval, as can a body missing some of its members.  *Cf., e.g.*, *Crawford v. Bd. of Educ.*, 458 U.S. 527, 532 n.5 (1982) (noting that "[t]he State Senate [of California] approved the Proposition by a vote of 28 to 6" though the California Senate had (and has) 40 seats); *Trunk v. City of San Diego*, 629 F.3d 1099, 1104 (9th Cir. 2011) (noting that the U.S. House of Representatives

"approved the bill by a vote of 349 to 74" though the House has 435 members).

Next is the phrase "board of directors." That phrase means the "governing body of a corporation, partnership, association, or other organization, elected by the shareholders or members to establish policy, elect or appoint officers and committees, and make other governing decisions."[5] Board of Directors, *Black's Law Dictionary* (11th ed. 2019). Nothing in this definition supports the unanimity requirement either. A board of directors certainly differs from a "committee of the board of directors" and from an individual director. But a board of directors does not cease to be a board of directors if a member is absent or non-voting any more than the United States Senate ceases to be the United States Senate if a Senator is absent or non-voting. *Cf. Viet. Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 110 (2d Cir. 2008) ("The full Senate rejected this measure by a vote of 62–22."); *Rosado v. Civiletti*, 621 F.2d 1179, 1187 (2d Cir. 1980) ("Following extensive hearings in the Senate Foreign Relations and Judiciary Committees, the full Senate unanimously approved the treaty by a vote of 90 to 0 on July 21, 1977."). So by its plain terms, Rule 16b-3(d)(1)'s text—"approved by the board of directors"—places no limits on how a board of directors must "approve[]" insider-issuer transactions like Pourhassan's 2019 option and warrant

---

[5] The law of Delaware, the state where CytoDyn is incorporated, has an analogous understanding. Boards of directors are groups of "1 or more members, each of whom shall be a natural person," and "[t]he business and affairs of every corporation [incorporated in Delaware] shall be managed by or under the direction of" that corporation's board. 8 Del. Code. § 141(a), (b).

ALPHA VENTURE CAPITAL PARTNERS V. POURHASSAN   11

award.  Rule 16b-3(d)(1) has no embedded requirements of unanimity, a supermajority, or a particular quorum.

So, if Rule 16b-3(d)(1) sets out no specific procedure for how a board must approve an insider-issuer securities acquisition, where do we find any procedural requirements?  The specific context here—corporate boards of directors—provides the answer.  In situations like this, the Supreme Court has recognized that the "gaps" in the federal laws "bearing on the allocation of governing power within [a] corporation" should generally be "filled with state law."  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).  Here, state law fills the gap well.  State corporate codes, supplemented by the articles of incorporation and corporate bylaws of individual corporations, typically specify the procedures that a corporate board must follow to "approve" corporate decisions.  For instance, the corporate law of Delaware, CytoDyn's state of incorporation and the home of most American corporations, explains that the "vote of the majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors." 8 Del. Code § 141(b).  In turn, Delaware defines a quorum as a "majority of the total number of directors."  *Id.*  Note the precise language in the statute: a board decision made by majority of a quorum of a board constitutes an "act of the board of directors," not an act of just *part* of the board.  *Id.*  So, for Delaware corporations like CytoDyn, a quorum of the board can take action by a majority vote.[6]  Here,

---

[6] Delaware law does permit corporations to specify, through their bylaws or articles of incorporation, different procedures that their boards can use.  Corporations may, for instance, require a larger or smaller number of directors than a simple majority for a quorum, or may require an affirmative vote by more than a simple majority of directors for the vote to be an "act of the board of directors."  *See* 8 Del. Code § 141(b).  CytoDyn elected to retain Delaware's default rules, such that a

Delaware law thus fills the gap left by Rule 16b-3(d)(1). Delaware state law controls the specific procedures that CytoDyn's board must follow to "approve[]" insider-issuer security transactions under Rule 16b-3(d)(1).

The appellant Shareholders disagree. They argue that under Rule 16b-3(d)(1), "the board of directors" means the "full board" such that each and every board member must vote to approve an insider-issuer transaction for that transaction to be "approved by the board of directors." But the word "full" appears nowhere in Rule 16b-3(d)(1). And as just explained, the rule's actual text—"approved by the board of directors"—does not support the Shareholders' unanimity requirement.

Recognizing that Rule 16b-3(d)(1)'s text cuts against them, the Shareholders cite several sources that do use the phrase "full board" when discussing Rule 16b-3(d)(1)'s board approval exemption. First are a few SEC writings that discuss Rule 16b-3(d)(1). *E.g.* Ownership Reports and Trading, 61 Fed. Reg. at 30,381 ("When the rule requires 'Non-Employee Director,' full board or shareholder approval, the Commission intends that the approval relate to specific transactions rather than the plan in its entirety." (footnote omitted)); *Exchange Act Section 16 and Related Rules and Forms*, U.S. SEC (Aug. 11, 2010), https://www.sec.gov/divisions/corpfin/guidance/sec16interp.htm ("[A]n amendment to a material term of a security acquired pursuant to the full board, Non-Employee Director or

---

"majority" of CytoDyn's board of directors "constitute[s] a quorum" and "the vote of a majority of the directors present . . . constitute[s] action by [CytoDyn's] Board of Directors."

ALPHA VENTURE CAPITAL PARTNERS V. POURHASSAN    13

shareholder approval conditions of Rule 16b-3(d) would require further approval . . . .").

The SEC writings cited by the Shareholder do not persuade.  At the outset, the Ownership Reports and Trading source is the SEC release containing the text of the final Rule 16b-3(d)(1).  But the Shareholders quote from the Rule's preamble, not from the text of the Rule itself.  As noted above, Rule 16b-3(d)(1) itself omits the word "full," and when a rule conflicts with its own preamble, the rule controls.  *See El Comite Para El Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062, 1070 (9th Cir. 2008).  More pointedly, we have already rejected an argument nearly identical to the Shareholders' here.  In *WildEarth Guardians v. Provencio*, we refused to modify an agency rule's meaning with the word "sparingly" because "the word 'sparingly' d[id] not appear in the Rule, but instead in its preamble."  923 F.3d 655, 667 (9th Cir. 2019).  Here, as in *WildEarth*, "the preamble does not 'impose a duty above and beyond the actual terms of the regulation.'"  *Id.*

More broadly, the SEC writings cited by the Shareholders are better interpreted as consistent with Rule 16b-3(d)(1), not in conflict with it.  The writings each use the phrase "full board" in the same sentence as descriptions of other forms of approval that can exempt an insider-issuer securities acquisition from Section 16(b) disgorgement.  For instance, the Rule preamble notes that Rule 16b-3(d) requires the "approval of either the full board, the committee of Non-Employee Directors or shareholders," Ownership Reports and Trading, 61 Fed. Reg. at 30,382, referring to the three exemptions set out in 17 C.F.R. § 240.16b-3(d).  Further, the writings nowhere define the board approval exemption as, or limit that exemption to, approval by a unanimous corporate board.

With these facts in mind, the SEC writings do not appear to use the phrase "full board" to imply that the board approval exemption requires the assent of each and every board member. Rather, the writings are better understood as using "full board" to distinguish between the different Rule 16b-3(d) approval exemptions, one of which requires approval from the "board of directors" as a whole and another of which requires approval from a constituent part of the board of directors: a "committee of the board." 17 C.F.R. § 240.16b-3(d)(1). So the SEC writings neither contradict Rule 16b-3(d)(1)'s plain text nor support the Shareholders' unanimity requirement. A "full" board of directors (as opposed to a "committee of the board") is still the "full" board (again, as opposed to a "committee" thereof) even if some members are absent or not voting. *Cf. Dow Chem. Co.*, 517 F.3d at 110 ("The *full* Senate rejected this measure by a vote of 62–22." (emphasis added)); *Rosado*, 621 F.2d at 1187 ("Following extensive hearings in the Senate Foreign Relations and Judiciary Committees, the *full* Senate unanimously approved the treaty by a vote of 90 to 0 on July 21, 1977." (emphasis added)).

Next, the Shareholders cite a few federal court opinions that also use the "full board" language, but these also provide the Shareholders no support. *Dreiling* did not address the question on appeal here—what form of "approv[al]" is necessary to trigger Rule 16b-3's board approval exemption—and it uses the phrase "full board" only in passing and only as part of two direct quotations of the SEC writings just described.[7] 458 F.3d at 949, 954 (twice quoting Ownership Reports and Trading, 61 Fed. Reg. at 30,381). Similarly, *Gryl ex rel. Shire Pharmaceuticals Group PLC v.*

---

[7] So too with *Atl. Tele-Network v. Prosser*, 151 F. Supp. 2d 633 (D.V.I. 2000). *See id.* at 638, 639.

*Shire Pharmaceuticals Group PLC* uses the phrase "full board" just once and does so whilst citing those same SEC writings. 298 F.3d at 141 n.2 (citing Ownership Reports and Trading, 61 Fed. Reg. at 30,381). If the SEC writings' use of the phrase "full board" does not support the Shareholders' position, then neither do cases that cite those writings without adding any additional exposition or interpretation. Further impugning the Shareholders' argument, *Gryl* affirmed that the Rule 16b-3(d)(1) exemption applied without bothering to analyze whether the relevant board vote was unanimous or whether the board meeting in question was attended by every board member. *See Gryl*, 298 F.3d at 144.

Third, the Shareholders point to a variety of sources, including Delaware state law, decisions of Delaware state courts, and CytoDyn's own corporate bylaws, that distinguish between the "whole board" or "full board" on one hand and a "majority" of the board of directors on another. *See, e.g.*, *In re Oracle Corp. Derivative Litig.*, No. 2017-0337, 2018 WL 1381331, at *22 n.287 (Del. Ch. Mar. 19, 2018); 8 Del. Code § 312(h). But like the SEC writings and the federal case law cited by the Shareholders, these sources are unpersuasive. A mere "majority" of a corporate board and the "whole board" (defined in CytoDyn's bylaws as "the total number of authorized Directors") are plainly different concepts. But this distinction is unhelpful here because Rule 16b-3(d) does not contain the words "whole," "full," or "majority." Rather, 16b-3(d)(1) simply says that for insider-issuer security transactions to be exempt from Section 16(b), the transactions must be "approved by the board of directors." And for the reasons given above, this language imposes no specific procedural requirements on how the board must give that approval.

Last, the Shareholders object that Pourhassan's interpretation of Rule 16b-3(d)(1) creates an "illogical" "loophole." If Rule 16b-3(d)(1) permits corporate boards to approve insider-issuer security transactions in any way that complies with corporate bylaws and Delaware state law, the Shareholders complain that the level of board support necessary to approve such a transaction turns on the "form of the approval in question." What the Shareholders mean is that had CytoDyn's board approved Pourhassan's 2019 option and warrant award without a board meeting but by the written approval of the directors, the board would have needed to act unanimously. But because the board acted during an actual meeting, the board needed only a majority vote under Delaware law. *Compare* 8 Del. Code § 141(b) ("The vote of the majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors . . . ."), *with id.* § 141(f) (providing that a board of directors can take action "without a meeting if all members of the board . . . consent thereto in writing").[8] But this is not a "loophole." This is how corporate law works. Delaware state law deliberately imposes stricter-than-usual requirements on corporate boards when they act by written consent, a process that lacks the deliberation and procedural formalities inherent in a board meeting. The distinction that Delaware draws between board approval at a meeting and board approval by written consent is, as they say, not a bug but a feature.

With the above in mind, we agree with the district court that Rule 16b-3(d)(1) exempts Pourhassan's 2019 option and warrant award from Section 16(b). Taking as true the allegations in paragraphs 31 and 32 of the Shareholders' complaint, a quorum of CytoDyn's board met and approved

---

[8] CytoDyn's corporate bylaws draw the same distinction.

that award by a majority vote, in compliance with both Delaware corporate law and CytoDyn's bylaws. *See* 8 Del. Code § 141(b). This is sufficient under Rule 16b-3(d)(1). Pourhassan thus was not required to disgorge to CytoDyn his profits when he sold stock less than six months after receiving the 2019 option and warrant award. *See* 15 U.S.C. § 78p(b); 17 C.F.R. § 240.16b-3(d)(1). The Shareholders' complaint was properly dismissed.

\* \* \*

While this case turns on discrete questions of regulatory and statutory interpretation, it is just a part of a larger balancing act between federal securities law and state corporate law. As the Supreme Court observed decades ago, corporations are "creatures of state law." *Santa Fe Indus. v. Green*, 430 U.S. 462, 479 (1977) (quoting *Cort v. Ash*, 422 U.S. 66, 84 (1975)). Investors thus "commit their funds to corporate directors on the understanding that, except where federal law expressly requires certain responsibilities of directors with respect to stockholders, state law will govern the internal affairs of the corporation." *Id.* (quoting *Cort*, 422 U.S. at 84).

Here, no federal law expressly requires us to federalize the state rules governing corporate boards' internal affairs. SEC Rule 16b-3(d)(1) exempts insider-issuer acquisitions from Section 16(b) of the Securities Exchange Act if a corporate board of directors "approve[s]" those acquisitions, but the rule's text does not require the board to follow any particular procedure or process when giving that approval. 17 C.F.R. § 240.16b-3(d). Mindful of the careful balance between federal securities law and state corporate law, we leave the determination of what a corporate board must do to approve insider-issuer acquisitions to the laws of the state where the corporation is incorporated. *See Kamen*, 500 U.S.

18 ALPHA VENTURE CAPITAL PARTNERS V. POURHASSAN

at 99. When it comes to the precise procedure that a corporate board of directors must follow to satisfy Rule 16b-3(d)(1), federal securities law defers to—and does not displace—the state laws governing corporate boards.

## IV.     CONCLUSION

The district court's ruling is **AFFIRMED**.